# Exhibit 10



700 13th Street, NW
Suite 600
Washington, D.C. 20005-3960

☎ +1.202.654.6200
✆ +1.202.654.6211
PerkinsCoie.com

October 8, 2019

Marc E. Elias
melias@perkinscoie.com
D.   +1.202.654.6200
F.   +1.202.654.9126

Secretary of State Jocelyn Benson
Michigan Department of State
Lansing, MI 48918

**Re:     Unconstitutional Michigan Voting Laws**

Dear Secretary Benson:

I am writing on behalf of Priorities USA regarding several state election laws that inhibit full access to the franchise for many Michiganders and threaten to undermine the recent expansion of voting rights enshrined in the Michigan Constitution, as well as the federal and state constitutional protections afforded to political speech and associational rights. As you know, the Michigan Constitution was recently amended, due to the passage of Proposal 3 (2018), to expand voting opportunities for Michiganders and to guarantee the right to register to vote on Election Day (and 14 days before), as well as the right to be automatically registered to vote when conducting business with the Secretary of State, among others. We are concerned that some of the recently enacted implementing statutes, along with other laws limiting assistance that my client and other 501(c) organizations can provide voters, impose needless barriers to the voting process and violate the United States and Michigan Constitutions. We know that you share our goal of ensuring that all eligible Michiganders are able to vote and should not face unnecessary barriers in doing so. It is in that spirit that we are writing you to protect this fundamental right.

*First*, the newly enacted Michigan statute implementing the constitutional right to register to vote on, or within 14 days of, Election Day adopts an overly restrictive definition of "proof of residency." Under the statute, only a small subset of documents is deemed acceptable to establish residency, which inhibits some Michigan residents, particularly young voters, from participating in the expanded registration window. *Second*, Michigan's ban on the transportation of voters to polling locations imposes an undue burden on constitutionally protected speech and associational rights, inhibits get-out-the-vote ("GOTV") efforts, limits political engagement in the critical moments of an election, and ultimately results in less voting among those who have difficulty getting to polling places. *Third*, Michigan's restriction on soliciting or returning absentee ballot applications is impermissibly vague. It potentially covers a wide range of constitutionally protected voter assistance-related activities and goes much further than necessary to prevent fraud.

We are concerned that these laws, if allowed to remain in place, will burden Michiganders' right to vote and to participate in the political process. Thus, we respectfully ask that you request an opinion from Attorney General Dana Nessel regarding the constitutionality of these Michigan laws, pursuant to Michigan Compiled Laws Section 14.32, which requires the Attorney General to provide an "opinion upon all questions of law submitted. . . by . . . any [] state officer."

Secretary of State Jocelyn Benson
October 8, 2019
Page 2

Finally, we seek your guidance on how the State plans to interpret and implement the new automatic voter registration provision of Article II, Section 4(1)(D) of the Michigan Constitution, which provides qualified residents who conduct business with the Secretary of State regarding driver's licenses or state identification cards ("state IDs") the right to be automatically registered to vote. Currently, we understand that young Michigan residents who obtain driver's licenses and state IDs before turning 17.5 years old (the minimum age to be eligible to register to vote) are not being automatically registered upon reaching the age of eligibility. Rather, these Michiganders must either have further contact with the Secretary of State's Office to benefit from this constitutional right or register to vote on their own. To ensure that young voters receive the full benefit of Section 4(1)(D), we request that you automatically register all residents who previously conducted business with the Secretary of State's Office once they reach the age of 17.5 years old.

## I.    The New Proof of Residency Statute is Unconstitutional.

As a result of the new voting rights enshrined in the State Constitution, Michigan voters can now register to vote on, or during the 14 days before, Election Day. Yet, many of Michigan's voters will be denied meaningful access to this expanded opportunity to register because of a recently enacted statute that adopts an exceedingly narrow definition of the "proof of residency" required to register during this timeframe.

Under Section 168.497 of the Michigan Compiled Laws, an individual who seeks to register to vote on, or during the 14 days before, Election Day can establish her residency by presenting one of the following five enumerated documents, so long as it shows "residency in that city or township": (1) a Michigan operator's license; (2) a chauffeur's license; (3) an enhanced driver's license; (4) an enhanced state personal identification card; or (5) certain official state personal identification cards. *Id.* at (2)(a)-(b).

If an individual does not have any of the five enumerated identification documents, she can register to vote by signing an affidavit affirming that fact *and* presenting a current utility bill, bank statement, paycheck, government check, or "other government document," as long as it "contains the applicant's name and current residence address." *Id.* at (4). In this scenario, an eligible Michigan voter can cast a challenged ballot.

This statutory scheme permits only a limited subset of documents to establish residency. A voter who attempts to register without these documents—including voters who submit an affidavit and a utility bill—can only cast a "challenged ballot." *Id.* at (5). This weighs most heavily on young voters, particularly those who live with family members or in private college dormitories, who are less likely to possess the requisite identification documents. And these restrictions are entirely unnecessary because they are duplicative of other safeguards that are in place to verify residency. For example, all individuals must sign an affirmation on their voter registration application, under penalty of perjury, that the "address where you live" listed on the application "is true." *See* MICH. SEC'Y OF STATE, *State of Michigan Voter Registration Application*,

Secretary of State Jocelyn Benson
October 8, 2019
Page 3

https://www.michigan.gov/documents/MIVoterRegistration_97046_7.pdf; *see also* MICH. COMP. LAWS § 168.933.

The statute's narrow interpretation of "proof of residency" is also inconsistent with the State Constitution's requirement that the enumerated rights in Article II, Section 4 be construed "liberally . . . in favor of voters' rights in order to effectuate its purposes." MICH. CONST. Art. II, § 4(1). By curtailing the forms of acceptable "proof of residency" in a way that excludes other commonly-held documents that demonstrate residency, the statute prevents many voters from exercising their right to register within 14 days of an election or on Election Day and therefore violates the Michigan Constitution. We respectfully ask that you seek an advisory opinion from the Attorney General regarding the constitutionality of the proof of residency statute.

## II. Michigan's Prohibition on the Transportation of Voters to Polling Locations Violates the United States and Michigan Constitutions.

We have similar doubts regarding the constitutionality of the Michigan law that prohibits the transportation of voters to polling locations. The statute specifically provides that a person is guilty of a misdemeanor for "hir[ing] a motor vehicle or other conveyance or cause the same to be done, for conveying voters, other than voters physically unable to walk, to an election." MICH. COMP. LAWS § 168.931. Put simply, this law is unconstitutional, as it criminalizes behavior that is protected by the First Amendment to the United States Constitution and the Michigan Constitution.

Both the United States and Michigan Constitutions guarantee freedom of speech and association, and political "speech . . . occupies the core of th[at] protection." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995); *see also Thomas M. Cooley Law Sch. v. Doe*, 300 Mich. App. 245, 256 (Mich. App. Ct. 2013) ("The United States and Michigan Constitutions provide the same protections of the freedom of speech."). By prohibiting the transportation of voters to polling locations, the statute inhibits protected political activities, including important GOTV efforts, which often include transporting voters to the polls. *See Branti v. Finkel*, 445 U.S. 507, 529 n.10 (1980) ("[T]he citizen who transports voters to the polls on Election Day performs a valuable public service."); *League of Women Voters of Fla. v. Cobb*, 447 F. Supp. 2d 1314, 1333 (S.D. Fla. 2006) (holding that persuading others to vote was protected "political speech and association"). It is unclear, for instance, whether "Souls to the Polls" programs and other efforts to engage communities in the political process and facilitate their exercise of the right to vote would survive scrutiny under this transportation restriction. Thus, the statute limits political speech, as the inability of campaigns, voter advocacy organizations, and others to pay individuals to drive voters to the polls may result in fewer individuals being willing to serve as drivers and, ultimately, less voting among those who have difficulty getting to polling places. *See Meyer v. Grant*, 486 U.S. 414, 428 (1988) (holding that that banning petition circulators from receiving payment unconstitutionally restricted free speech).

Secretary of State Jocelyn Benson
October 8, 2019
Page 4

Meanwhile, the State does not have an interest that justifies this transportation restriction, nor is the law narrowly tailored to address any specific concern. Vote buying and other forms of corruption in elections are already effectively addressed by existing statutes. *See, e.g.*, MICH. COMP. LAWS § 168.931(1)(a) (making it a misdemeanor to "either directly or indirectly, give, lend, or promise valuable consideration, to or for any person, as an inducement to influence the manner of voting by a person relative to a candidate or ballot question, or as a reward for refraining from voting"); *id.* § 168.932(a) (making it a felony to "attempt, by means of bribery, menace, or other corrupt means or device, either directly or indirectly, to influence an elector in giving his or her vote, or to deter the elector from, or interrupt the elector in giving his or her vote at any election held in this state"). Further, the statute's prohibition on transporting voters "other than [those] physically unable to walk" discriminates against Michiganders who are physically "able to walk" but otherwise require assistance to get to the polls.

Because the transportation restriction is unconstitutional, we respectfully request that you seek an opinion from the Attorney General regarding the constitutionality of Michigan Compiled Laws Section 168.931.

**III.    Michigan's Restrictions on Political Activity Relating to Absentee Ballot Applications Violate the U.S. and Michigan Constitutions.**

Michigan laws that impose restrictions on providing assistance to voters by encouraging absentee voting or returning absentee ballot applications are also incompatible with the United States and Michigan Constitutions. Specifically, Michigan Compiled Laws Section 168.759 requires an individual who assists another voter regarding an absentee ballot application to affirm that she did not "solicit or request to return the application," *id.* at (5), and it prohibits an individual from assisting another voter in returning such an application unless the "applicant *cannot* return the application" via mail, personal delivery, or with the help of an "immediate family" member. *Id.* at (6)(a)-(d) (emphasis added).

These restrictions—to the extent they prohibit communications informing voters of their right to request or vote an absentee ballot, urging people to request an absentee ballot application, distributing absentee ballot application forms to voters, or requesting to return absentee ballots— chill protected political speech and the right of association in violation of the First Amendment to the United States Constitution and the free speech protections of the Michigan Constitution. *See, e.g.*, *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 633 (1980) (holding charitable solicitations protected by the First Amendment); *Am. Ass'n of People with Disabilities v. Herrera*, 690 F. Supp. 2d 1183, 1215-16 (D. N.M. 2010) (finding that the plaintiff's generalized third-party voter registration activity, which encouraged and helped individuals register to vote, implicated expressive conduct because it was intended to "convey a message that voting is important"); *League of Women Voters of Fla. v. Browning*, 575 F. Supp. 2d 1298, 1321 (S.D. Fla. 2008) ("Plaintiffs' interactions with prospective voters in connection with their solicitation of voter registration applications constitutes constitutionally protected activity."); *Cobb*, 447 F. Supp. 2d

Secretary of State Jocelyn Benson
October 8, 2019
Page 5

at 1333 (holding that persuading others to vote was protected "political speech and association"). The statute's use of the term "solicit" is also unconstitutionally vague and may ultimately deter other forms of permitted, expressive conduct. *See Nat'l People's Action v. Blue Island*, 594 F. Supp. 72, 80 (N.D. Ill. 1984) (holding "solicit" in an ordinance unconstitutionally vague).

To be clear, the statute exceeds what is necessary to protect against fraud in light of the other safeguards in place. For example, each registered elector who helps a voter return an absentee ballot application must "sign the certificate on the absent voter ballot application" and must certify that, among other things, he or she "ha[s] not made any markings on the application"; "ha[s] not altered the application in any way"; "ha[s] not influenced the applicant"; and is "aware that a false statement in this certificate is a violation of Michigan election law." MICH. COMP. LAWS § 168.759(5). And Michigan law even restricts those who can be in possession of a signed absentee ballot application to the applicant, her immediate family, someone in her household, someone whose job includes handling mail, a registered elector chosen by the applicant to return the application, or an authorized election official. *See id.* at (4).[1]

Thus, we respectfully request that you seek an advisory opinion from the Attorney General regarding the constitutionality of the provisions Michigan Compiled Laws Section 168.759 to ensure that the voting rights enshrined in the Michigan and United States Constitutions are given full effect.

## IV. The Automatic Registration Provision Must be Interpreted in a Manner that Does Not Violate the United States and Michigan Constitutions.

The Michigan Constitution now guarantees that "an elector qualified to vote in Michigan shall have . . . the right to be automatically registered to vote as a result of conducting business with the secretary of state regarding a driver's license or personal identification card." MICH. CONST., art. II, § 4(1)(d) (the "Automatic Registration Provision"). Michigan residents are eligible to register to vote at the age of 17.5 years old, MICH. COMP. LAWS § 168.492, and it is our understanding that, under current practice, only those who conduct business with the Secretary of State *after* reaching this age are being automatically registered. We believe, however, that the Automatic Registration Provision requires that residents who obtain licenses or state IDs well before reaching the age of eligibility be automatically registered to vote once becoming 17.5 years old.

---

[1] Absentee ballot applications in Michigan state explicitly that false statements on an application are a criminal misdemeanor offense. MICH. COMP. LAWS § 168.759(5). And a separate Michigan statute makes it a felony to forge a signature on an absentee ballot application. *Id.* at (8) ("A person who forges a signature on an absent voter ballot application is guilty of a felony.").

Secretary of State Jocelyn Benson
October 8, 2019
Page 6

Many residents under the age of 17.5 obtain licenses or ID cards and have no further interaction with the Secretary of State until years after. For example, Michigan residents as young as 14 years and 9 months old can obtain a Level 1 graduated (or learner's) license. MICH. COMP. LAWS § 257.310e(3), (7). These young residents can later obtain a Level 2 graduated (or intermediate) license after six months and a Level 3 graduated (or full) license at the age of 17, all without having to go to a Secretary of State branch office. *Id.* § 257.310e(5)-(7), (9).[2] Further, a Michigan resident can obtain a state ID at any age, and the card remains valid for up to four years from the resident's last birthday.[3] Thus, as currently implemented, the Automatic Registration Procedure may not reach a significant number of residents who have already obtained Level 3 licenses or state IDs and have no reason to return to a Secretary of State branch office until several years after reaching the age of eligibility to register to vote.[4]

The current application of the Automatic Registration Procedure is not only contrary to the text of Article II, Section 4(1)(d), but it contravenes the Michigan Constitution's mandate that all provisions of Article II, Section 4(1) be "liberally construed in favor of voters' rights in order to effectuate its purposes." Requiring voters to conduct business with the Secretary of State *after* reaching the age of 17.5 in order to be automatically registered unduly limits the exercise of this constitutional right and is inconsistent with the goal of expanding access to the franchise, particularly for young voters.[5] To implement and give full effect to Section 4(1)(d), we request that the Secretary of State automatically register Michigan residents who are already in the Secretary of State's database—because they previously obtained a graduated driver's license or state ID—once they reach 17.5 years of age. And there should be no requirement that those under the age of 17.5 years take any additional steps or have further contact with the Secretary of State's Office in order to be automatically registered to vote once eligible. We ask that your office reconsider its current interpretation and practice to avoid the need for judicial intervention.

---

[2] MICH. SEC'Y OF STATE, *Graduated Driver Licensing Eligibility Requirements*, https://www.michigan.gov/sos/0,4670,7-127-1627_60169_60175_84272-269642--,00.html (last visited Aug. 28, 2019).

[3] *See* MICH. COMP. LAWS § 28.291; MICH. SEC'Y OF STATE, *What Every Driver Must Know, Chapter 3: Voter Registration and State IDs*, https://www.michigan.gov/documents/sos/WEDMK_Chapter_Three_Voter_Registration_and_State_ID_613799_7.pdf (last visited Oct. 7, 2019).

[4] The Level 3 graduated license remains valid until the driver turns 21 years old. Mich. Sec'y of State, *What Every Driver Must Know–Chapter 1: Your Driver's License 10*, https://www.michigan.gov/documents/sos/WEDMK_Chapter_One_Your_Drivers_License_613796_7.pdf (last visited Aug. 28, 2019).

[5] *See Hearings Before the H. Comm. On Elections and Ethics,* State of Michigan 100th Legislature (2019) (testimony of Secretary of State Jocelyn Benson), http://house.mi.gov/sessiondocs/2019-2020/testimony/Committee500-3-6-2019.pdf.

Secretary of State Jocelyn Benson
October 8, 2019
Page 7


We appreciate your attention to these issues and to ensuring the full and fair access to the franchise and the constitutional rights guaranteed to Michigan voters. We welcome the opportunity to discuss these issues further and to provide any additional information you may need in considering our requests. In any event, please advise us by no later than October 21, 2019, as to your position on each of these requests.


Sincerely,

Marc E. Elias


CC: Attorney General Dana Nessel